UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

v.                                                                      5:09-CR-3 (GTS)

JOHNNIE BUSH,

        Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

HON. ANDREW T. BAXTER                                 RANSOM P. REYNOLDS, ESQ.
United States Attorney for the                        Assistant United States Attorney
Northern District of New York
  Counsel for the Government
100 South Clinton Street
Syracuse, NY 13261-7198

FEDERAL PUBLIC DEFENDER OFFICE                        JAMES F. GREENWALD, ESQ.
  Counsel for Defendant                               Assistant Federal Public Defender
Office of the Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, NY 13202

HON. GLENN T. SUDDABY, United States District Judge

### DECISION and ORDER

Currently before the Court, in this criminal action charging Johnnie Bush ("Defendant") with possession of illegal drugs and weapons, is a motion to suppress filed by Defendant. (Dkt. Nos. 12, 20.) Generally, Defendant's motion seeks the suppression of (1) physical evidence discovered in his grandmother's house during the execution of a search warrant, and (2) a confession that Syracuse Police officers elicited from him allegedly before he was advised of his *Miranda* rights, and after he requested counsel and they used coercive techniques to overcome his will. (*Id.*) For the reasons set forth below, Defendant's motion is denied.

**I.    RELEVANT PROCEDURAL HISTORY**

On November 18, 2008, Defendant was arrested at his grandmother's house in Syracuse, New York. (Dkt. No. 11, Part 1, at 1-2.) On January 7, 2009, a two-count indictment was filed charging Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(l), and with being a felon in possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). (Dkt. No. 1, at 1-2.)

On June 1, 2009, Defendant filed a motion to suppress (1) physical evidence discovered in his grandmother's house during the execution of a search warrant, and (2) a confession that Syracuse Police officers elicited from him allegedly before he was advised of his *Miranda* rights, and after he requested counsel and they used coercive techniques to overcome his will. (Dkt. No. 12; *see also* Dkt. No. 20.) On July 15, 2009, a suppression hearing was held before the undersigned. At the conclusion of the hearing, the undersigned reserved decision, permitted the filing of supplemental briefs (which the parties subsequently filed on September 25, 2009), and indicated that a written decision would follow. This is that written decision.

**II.   STATEMENT OF FACTS**

In October 2008, a Syracuse Police officer received information that Defendant was selling crack cocaine in the City of Syracuse. (Dkt. No. 21.) After receiving this information, the officer conducted a records check, which revealed the following: (1) Defendant had one prior felony conviction for Criminal Possession of a Controlled Substance in the Fifth Degree; and (2) Defendant was on parole and resided at 115 Delong Avenue in Syracuse, New York. (*Id*.) Subsequently, an undercover Syracuse Police officer conducted two controlled purchases of crack cocaine from Defendant. (Dkt. No. 17, at 20.) Prior to the second purchase, surveillance

of Defendant was conducted, which revealed that Defendant was storing the crack cocaine in his grandmother's house. (*Id*. at 21.)  Based upon all of this evidence, the officers obtained a search warrant for the house of Defendant's grandmother. (*Id*. at 21-22.)

On November 18, 2008, Syracuse Police officers executed the search warrant. (*Id*. at 5.)  After leading Defendant outside, the officers placed him in handcuffs, patted him down, and then escorted him back into his grandmother's house. (*Id*. 5-7.)

Inside the house, Defendant was seated at the dining room table next to his grandmother, sister, friend, and three-year-old niece. (*Id*. at 7, 10-11, 22-23, 47, 60.)  His grandmother's name was Lois Spady. (*Id*. at 23-24, 39, 66.)  His sister's name was Tonya Stith. (*Id*. at 20, 23, 39, 60.)  His friend's name was Rahkeem Taylor. (*Id*. at 10, 23, 39.)  Each of the individuals had been previously identified as living in the house (with the possible exception of Rahkeem Taylor). (*Id*. at 39.)  Tonya Stith and Rahkeem Taylor were handcuffed. (*Id*. at 22.)  All of the individuals inside the house were read their *Miranda* rights from a *Miranda* card by Detective Haskell. (*Id*. at 26-28.)  After being read their rights, Detective Haskell asked them if they understood their rights. (*Id*.)  Mr. Bush acknowledged that he understood his rights. (*Id*. at 28.)  Afterward, all of the adults in the house were strip-frisked in separate rooms. (*Id*. at 65.)  No contraband was found on any of the adults. (*Id*. at 66.)

After searching all of the adults in the house, the officers searched the house. (*Id*. at 24.)  While performing a search of the house, Detective Haskell located, in the top drawer of a dresser in the rear bedroom, a small plastic bag containing a beige chunky substance and two hundred forty-five dollars ($245.00) in United States currency. (*Id*. at 24-25, 32-33, 36, 41-42, 44.)  In the same rear bedroom, Detective Haskell also located the following: (1) an open box of live .22

caliber ammunition; (2) a Centro bus pass bearing Defendant's name; (3) a New York identification card bearing Defendant's name and photograph; and (4) clothing and footwear consistent with Defendant's size and build.  (*Id*. at 17-18, 24-25, 32-33, 35-36, 49, 54-55.)

From the front bedroom, Detective MacDermont located two knotted sections of clear plastic each containing a small amount of a beige chunky substance, and a drug-assistance benefit card in the name of Melvin C. Spady.  (Dkt. No. 17, at 36, 54-55, 62.)  Detective Renna located a loaded .40 caliber handgun under the stairs to the basement.  (Dkt. No. 17, at 25.)

After the search of the house was complete, Detective Haskell escorted Defendant into the living room, while Defendant's family remained in the adjacent dining room.  (*Id*. at 28-29.) While in the living room, Detective Haskell asked Defendant if he wanted to talk, informed him that the police "had found some things," and told him that "if . . . someone didn't acknowledge that it was theirs, then everyone, every adult in the house was going to have to go to jail because [the handgun that] was found was in a common area."  (*Id*. at 30-31.)  Eventually, Defendant provided a written statement to Detective Haskell claiming ownership of the cocaine base (crack) and firearm recovered from the house.  (*Id*. at 30-33.)

### III.   SUMMARY OF GROUNDS FOR MOTION TO SUPPRESS

In his motion to suppress, Defendant argues that the search and subsequent elicitation of an admission were improper.  (Dkt. No. 12, Part 2; Dkt. No. 20, Part 1.)  In particular, Defendant asserts the following three arguments: (1) Defendant's confession was obtained in violation of the Fifth Amendment because it was obtained before he was advised of his *Miranda* rights, after he invoked his right to counsel, and after the police used unduly coercive techniques to overcome his will (by threatening to arrest some of the individuals in the house without probable

cause); (2) the search warrant was procured by fraud; and (3) even if the search warrant was lawfully obtained, the strip search of all the adults in the house exceeded the scope of the search warrant. (Dkt. No. 12, Part 2, at 4-7; Dkt. No. 20, Part 1, at 1-11.) For each of these reasons, Defendant argues that all of the evidence recovered from the house, including Defendant's confession, must be suppressed. (*Id*.)

In response, the Government argues that Defendant's argument that his confession was obtained in violation of the Fifth Amendment is without merit because, based on the credible testimony before the Court at the suppression hearing, Defendant was clearly advised of his *Miranda* rights before signing his confession, he never invoked his right to counsel, and Detective Haskell's threat to arrest all adults in the house was not coercive because the handgun was found in a common area. (Dkt. No. 13, Part 1, at 5-10; Dkt. No. 21, Part 1, at 3-6.) Because Defendant raised his latter two arguments (i.e., that the search warrant was procured by fraud, and/or that the strip search of all the adults in the house exceeded the scope of the search warrant) for the first time in his post-hearing supplemental brief, filed on the same day as the Government's post-hearing supplemental brief, the Government did not have an opportunity to respond to those two arguments.

## IV. ANALYSIS

As an initial matter, the Court finds, after carefully reviewing the record on Defendant's motion (including the parties' legal arguments and the credible testimony presented at the suppression hearing), the Government has proved by a preponderance of the evidence that (1) Defendant was advised of his *Miranda* rights before signing his confession, and (2) Defendant never invoked his right to counsel before signing his confession. Accordingly, the Court will not

discuss these issues any further in this Decision and Order. Rather, the Court will discuss only the remaining issues raised by the parties: whether the confession was coerced, whether the search warrant was procured by fraud, and whether the strip search of the adults in the house exceeded the scope of the search warrant.

      A.     **Whether Defendant's Confession Was Coerced**

Police statements render a confession involuntary where (1) police direct the statement at the defendant for the sole purpose of eliciting a confession from the defendant, and (2) police could not have "lawfully executed" the threat carried in the statement. *United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003) (finding defendant's confession voluntary where police could lawfully execute the threat to arrest defendant's sister). Here, Defendant argues that his confession was coerced by Detective Haskell's threat that, if he did not confess, his family members would all be arrested for possessing the firearm.

It is not coercive to threaten a suspect's family member with arrest to secure a confession from the suspect if there is probable cause to arrest the family member. In addition to the relying on the three cases cited by the Government in its post-hearing supplemental brief (Dkt. No. 21, Part 1, at 3-4), the Court relies on several other cases in reaching this conclusion. *See United States v. Mullens*, 536 F.2d 997 (2d Cir. 1976) ("[T]he record is bereft of any indication of police overreaching. [A]lthough Mullens' anxieties were likely exacerbated by Agent Zona's comment that 'we have the goods on your mother . . .,' the uncontradicted testimony of Zona and Hunter was that it was appellant who initiated the bargaining process, offering to trade his own cooperation for his parents' release."); *Gibson v. Phillips*, 420 F. Supp.2d 327, 336 (S.D.N.Y. 2006) (upholding a confession where police threatened to question and arrest certain family

members who were implicated in the current investigation and other crimes, because the interrogation "comprised the type of circumstances which, although possibly presenting 'difficulties' to an interviewee were found insufficient to create coercion"); *Vega v. Artuz*, 97-CV-3775, 2002 WL 252764, at *11 (S.D.N.Y. Feb. 20, 2002) (holding that "statement was not so coercive as to overbear [defendant's] will" where defendant's family had been threatened with arrest "[b]ut the evidence at the suppression hearing revealed that the detectives merely told [defendant] in substance that his wife and mother were suspects because they were also in the household with the victim and that if the petitioner had done it, he should save his family further trouble . . ."); *United States v. Ortiz*, 499 F. Supp.2d 224, 232-33 (E.D.N.Y. 2007) ("It is not coercive to threaten a suspect's family member with arrest to secure a *Miranda* waiver from the suspect if, there is probable cause to arrest the family member.").

Here, the loaded handgun was found in a common area of the house. Lois Spady and Tonya Stith lived in the house; and Rahkeem Taylor was found present in the house, and possibly lived there as well. As a result, there was probable cause to arrest each of the adults in the house for possession of the handgun. Because of this fact, Detective Haskell's "threat" was nothing more than a communication of accurate information. Furthermore, there was no evidence presented at the suppression hearing that would suggest that Detective Haskell's statement overcame Defendant's will.

For all of these reasons, the Court rejects argument regarding whether Defendant's confession was coerced, and denies Defendant's motion to the extent that it is premised on this ground.

### B.      Whether the Search Warrant Was Procured by Fraud

To suppress evidence seized pursuant to a search warrant predicated on false information, the defendant must show the following: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) [citation omitted].

Defendant argues that Detective Haskell swore in his affidavit in support of the search warrant application as follows: (1) he had probable cause to believe that Defendant was selling crack cocaine "based on his own observations and the personal knowledge of others"; (2) the "others" he was referring to consists of people who "have assisted in previous drug investigations, have provided information regarding drug activity verified to be true and accurate, and have made controlled purchases of narcotics and marijuana" in the past, and includes "a confidential informant."  (Dkt. No. 20, Part 2.)  Defendant further argues that Detective Haskell testified at the federal grand jury proceeding against Defendant that the purchases of crack cocaine from Defendant were made by a "confidential and reliable informant." (Dkt. No. 20, Part 4, at 5.)  However, Defendant argues, Detective Haskell testified at the suppression hearing that the purchases were made by an "undercover police officer."  (Dkt. No. 17, at 20, 21, 37, 38, 49, 51, 52.)

Because of the inconsistency between Detective Haskell's pre-hearing sworn statements and his hearing testimony, Defendant argues that the affidavit supporting the search warrant application is not reliable, and that therefore the evidence seized from Defendant's grandmother's house should be suppressed.  In the alternative, Defendant argues that the

8

Government should be precluded from offering any evidence or eliciting any testimony at trial regarding the claimed transactions that gave rise to the search warrant application.

Even assuming that there is an inconsistency between Detective Haskell's pre-hearing sworn statements and his hearing testimony, the Court can find no record evidence that these inaccuracies are the result of "the affiant's deliberate falsehood or reckless disregard for the truth," for purposes of *Salameh*, 152 F.3d at 113. No such testimony was adduced from Detective Haskell at the suppression hearing. (*See* Dkt. No. 17 at 19-66.) In any event, even if there was such record evidence, the Court can find no record evidence that the "alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding," for purposes of *Salameh*. The fact that the purchaser was not a "confidential and reliable informant" is immaterial under the circumstances, because the purchaser was in fact an "undercover police officer"–a source whose reliability is generally less-often questioned than is the reliability of a confidential informant, who is often a member of the "criminal milieu."[1] This is why courts often find that independent police corroboration has substantiated the credibility of a confidential informant, for purposes of satisfying the second prong of the Supreme Court's test in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969).[2]

---

[1] *See United States v. Kahmann*, 06-CV-0373, 2007 WL 909733, at *4 (D. Minn. March 23, 2007) ("But unlike the anonymous tipster at issue in *Illinois v. Gates*, the source here is not the conventional 'confidential informant'–an unnamed person who is often himself a member of the 'criminal milieu,' and who has provided law enforcement with tips of criminal activity. Here, in contrast, the affidavit was based on information from a citizen who was not a regular or paid 'informant.'").

[2] *See, e.g.*, *United States v. Zucco*, 694 F.2d 44, 49 (2d Cir. 1982) ("Almost every fact supplied by the informants was corroborated by the police. Under these circumstances, the police had every reason to believe the informants.").

For all of these reasons, the Court rejects argument regarding whether the search warrant was procured by fraud, and denies Defendant's motion to the extent that it is premised on this ground.

### C. Whether the Strip Search of the Adults in the House Exceeded the Scope of the Search Warrant

"It is well settled that during the execution of a search warrant, the police may detain those present at the premises being searched." *United States v. Hunter*, 07-CR-0265, 2008 WL 2074076, at *2 (W.D.N.Y. May 14, 2008) [citation omitted]. "Such detention does not rise to the level of an arrest." *Hunter*, 2008 WL 2074076, at *2 [citation omitted]). "The Supreme Court has held that an officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." *Id*. [citation omitted]. "This applies to all those present at the time of the search, not just 'owners' or 'tenants.'" *Id*. [citations omitted]. "Indeed, . . . the risk of harm to officers and occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id*. [citation omitted]. "The fact that the officers may have displayed or drawn their guns, or handcuffed those present during the search, is not, without more, unreasonable." *Id*. [citations omitted]. "Finally, the Supreme Court made clear in *Muehler* [*v. Mena*, 544 U.S. 93 (2005)] that questioning a person whom the police detain incident to a building search does not require independent probable cause because 'mere police questioning does not constitute a seizure.'" *Id*. [citations omitted]. Having said that, when a search warrant specifically authorizes the search of a particular individual in a residence, in order to search other occupants of the

residence, law enforcement officials need independent probable cause.[3]

Here, the search warrant in question did not specifically authorize the search of the three adults in question.  Granted, as stated above in Part IV.B. of this Decision and Order, probable cause existed to arrest each of the adults in the house for possession of the handgun because (1) the loaded handgun was found in a common area of the house, and (2) two of the adults in question (and possible the third adult in question) lived in the house.  However, whether or not a strip search of the three adults was proper–in the absence of their arrest and/or other indicia of necessity–is unclear based on the current record.  Fortunately for the Government, this issue is wholly immaterial for two reasons: (1) no contraband was recovered from the person of any of the three adults in question; and (2) Defendant does not have standing to assert the Fourth Amendment privacy right held by the other occupants of the house because Fourth Amendment rights are personal and cannot be asserted vicariously.  *See United States v. Pabon*, 603 F. Supp.2d 406, 414-16 (N.D.N.Y. 2009) (Kahn, J.) (defendant did not have standing to assert the Fourth Amendment privacy right held by occupant of house) (citations omitted).

For all of these reasons, the Court rejects argument regarding whether the strip search of the adults in the house exceeded the scope of the search warrant, and denies Defendant's motion to the extent that it is premised on this ground.

---

[3]  *See Ybarra v. Illinois*, 444 U.S. 85 (1979) ("It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed.  But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.  Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.  This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.  The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places.").

ACCORDINGLY, it is

ORDERED that Defendant's motion to suppress physical evidence discovered in his grandmother's house on November 18, 2008 (Dkt. No. 12) is **DENIED**; and it is further

ORDERED that Defendant's motion to suppress his confession signed on November 18, 2008 (Dkt. No. 12) is **DENIED**.

Dated: October 14, 2009
      Syracuse, New York

*/s/ Glenn T. Suddaby*
Hon. Glenn T. Suddaby
U.S. District Judge